[No. 35219. Department Two. April 7, 1960.]

ALFRED F. HOLMES, *Appellant*, v. NATIONAL VAN LINES, INC., *Respondent*.[1]

*Lycette, Diamond & Sylvester* and *John P. Lycette, Jr.,* for appellant.

*Kellogg, Reaugh, Hart & Allison* and *George H. Hart & Dudley Panchot,* for respondent.

[1]Reported in 350 P. (2d) 864.

HILL, J.—The issue, on this appeal, is the extent of a carrier's liability for articles lost in transit.

It is stipulated that certain articles included in a shipment of household goods—delivered by the plaintiff shipper to the defendant carrier at Cocoa Beach, Florida, and consigned to the shipper at Seattle, Washington—were lost in transit.

It is further stipulated that the value of the missing articles was $1,702.06, and their weight was two hundred and thirty-four pounds.

The liability of the carrier is, likewise, stipulated; but not the extent thereof.

The trial court found the liability to be limited to a value of thirty cents a pound, and entered a judgment for $70.20.

The shipper appeals, contending that the carrier was liable for the agreed value of the articles, $1,702.06.

The applicable law is that the carrier is liable for the value of goods lost in transit, unless there has been a binding written agreement limiting the liability. 49 U. S. C. A. (Sup.) § 20 (11).

A motor carrier in interstate commerce may limit its liability, but only when it does so in compliance with an interstate commerce commission order authorizing special rates, dependent upon either a declaration of value by the shipper in writing, or a released value in writing. 49 U. S. C. A. (Sup.) § 20 (11).

Any limitation of liability must be brought to the attention of the shipper, and a choice given to the shipper to contract with, or without, the limitation of liability in the movement of his goods. *Mickey Finn Clothes, Inc. v. Yale Transport Corp.* (1940), 23 N. Y. S. (2d) 84, 175 Misc. 242, and cases cited.

Three questions are presented; all of which must be answered in the affirmative before the carrier is entitled to limit its liability:

A. Was the proposed limitation of liability by the carrier (to thirty cents a pound), brought to the attention of the shipper?

B. Was he given a choice to contract with, or without, the limitation of liability?

C. Was the limitation of liability agreed to in writing?

The shipper relies, for a negative answer to these questions, on the fact that he never had any dealings with the carrier, other than pointing out to its representative (at his former home in Cocoa Beach, Florida) just what was to be shipped. He left with his family before the packing was completed, and without any knowledge as to rates or limitation of liability. He did not see the bill of lading until it was produced in court on the morning of the trial, and had never agreed to its terms. There was, so far as he was concerned: (a) no knowledge, (b) no choice, (c) no agreement in writing.

As the trial court pointed out, as between the shipper, personally, and the carrier, there was no limitation of liability established; but the shipper's agent who handled the transaction had: (a) knowledge; (b) a choice; and (c) admitted an agreement in writing.

█ The facts which must result in an affirmative answer to all three questions are: that the shipper was moving, at the direction of his employer Boeing Airplane Company, hereinafter referred to as Boeing, which was paying all of the moving expenses. Boeing was, beyond question, the agent of the shipper in selecting the carrier, in negotiating the terms of carriage, and in paying for the same. Boeing was familiar with the carrier's tariff and with its bill of lading. Boeing's directions, in writing, to the carrier were: "Do not insure, as the shipment will be covered by our blanket policy." It is undisputed that these words were Boeing's instructions to the carrier that the goods were to be shipped at a rate based on a released valuation of thirty cents a pound. Boeing and the carrier contemplated a bill of lading, such as was actually issued, which carried, in bold type, the statement that,

" . . . UNLESS A DIFFERENT VALUE IS DECLARED, THE SHIPPER HEREBY RELEASES THE VALUE TO 30¢ PER POUND FOR EACH ARTICLE."

It was not signed by either the shipper or by Boeing, but it is undisputed that it was the contract of carriage to which Boeing and the carrier agreed. Signature is, of course, the best evidence of agreement, but is not required. *American R. Express Co. v. Lindenburg* (1923), 260 U. S. 584, 67 L. Ed. 414, 43 S. Ct. 206; *Stricker v. Chicago & Northwestern R. System* (1949), 241 Iowa 649, 40 N. W. (2d) 30. Neither is delivery to and acceptance of the bill of lading by the shipper, prior to shipment, necessary. *Glickfeld v. Howard Van Lines* (1954; 9th Cir.) 213 F. (2d) 723. It is sufficient, if the writing expresses the agreement of the parties. *American R. Express Co. v. Lindenburg, supra*; *Glickfeld v. Howard Van Lines, supra*.

The bill of lading was mailed to Boeing with the invoice for the shipping charges, which was in accordance with Boeing's standing instructions, so that the invoice could be checked against the bill of lading. Boeing paid the transportation charges in the sum of $1,218.89, being at the rate based on the limitation of liability to thirty cents a pound.

Boeing knew that the carrier's tariff, for which it contracted, was based on a limitation of liability to thirty cents a pound for each article; it knew that it could contract without such a limitation, but chose to accept the limitation and to carry its own insurance. Its letter to the carrier, saying "Do not insure, as the shipment will be covered by our blanket policy," was an agreement, in writing, to accept the known limitation of liability, as was the bill of lading. The case of *Glickfeld v. Howard Van Lines, supra,* is quite comparable on its facts.

The judgment for $70.20, entered in accordance with the limitation of liability to thirty cents a pound, is affirmed.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.