Juliet M. D. ANTON, Plaintiff-Appellee,

v.

GREYHOUND VAN LINES, INC.,
Defendant-Appellant.

No. 77–1409.

United States Court of Appeals,
First Circuit.

Argued Sept. 14, 1978.

Decided Dec. 21, 1978.

Gordon A. Rehnborg, Jr., Manchester, N. H., with whom Wiggin & Nourie, Manchester, N. H., on brief, for defendant-appellant.

Grenville Clark, III, Manchester, N. H., with whom McLane, Graf, Greene, Raulerson & Middleton, Manchester, N. H., on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, KUNZIG,* Judge, U. S. Court of Claims, DUMBAULD,** District Judge.

* Sitting by designation.

** Of the Western District of Pennsylvania, sitting by designation.

KUNZIG, Judge.

This is a suit by Col. Juliet Anton (plaintiff or shipper) against Greyhound Van Lines, Inc. (defendant or carrier) to recover the full value of her household goods destroyed by fire while in transit in the carrier's van between Montgomery, Alabama and Manchester, New Hampshire. The principal question for decision is whether the carrier effectively limited its liability for loss and damage of the goods in question within the meaning of 49 U.S.C.A. § 20(11)[1] of the Interstate Commerce Act. Because we affirm the district court's finding that the carrier did not properly limit its liability, we hold the shipper is entitled to recover the full value of her destroyed goods.

In 1972, plaintiff retired from the United States Air Force after having served on active duty for approximately 27 years. Her last active duty station was at Maxwell Air Force Base in Montgomery, Alabama. In connection with her retirement, plaintiff made arrangements to have her household goods and furnishings stored, at Government expense, in Montgomery at the Alabama Transfer & Warehouse Company.

Some 20 months later, in December 1973, plaintiff was notified that she could no longer have her belongings remain in storage at the expense of the Government. Consequently, she requested the Air Force to have her goods shipped from Montgomery to Manchester, New Hampshire, where she was in the process of building a new home.

Pursuant to such request, the Air Force contacted Greyhound's agent, Triple A Associates Moving & Storage Company, and engaged its services for the proposed shipment. In connection with these arrangements, the Traffic Management Office at Maxwell Air Force Base prepared and issued a Government Bill of Lading signed by an Air Force representative as well as Greyhound's agent. This document, which made reference to Military and Government Rate Tariff No. 1–F,[2] contained the following clause, "household goods released at a valuation of _____ cents per pound per article." The evidence at trial indicated that no figures were inserted in such clause at the time the document was received by Greyhound's agent.[3]

1. Section 20(11) of the Interstate Commerce Act (frequently termed the Carmack Amendment) provides:

> Any common carrier * * * subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading * * for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * * : *Provided, however,* That the provi-

sions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * *.

2. Military and Government Rate Tariff 1–F states that shipments moving on a Government Bill of Lading will be deemed released at a valuation of $.60 per pound per article unless otherwise specifically annotated thereon.

3. The original Government Bill of Lading was lost. Testimony at trial was to the effect that no released value was inserted on the document when the goods were picked up for ship-

Following receipt of the Government Bill of Lading, Greyhound prepared its own internal bill of lading. This document, which was not signed by either Greyhound, the Air Force or the plaintiff, contained no limitation of liability other than reference back to the Government Bill of Lading and Military and Government Rate Tariff No. 1–F.

In January 1974, pursuant to the authorization extended by the Government Bill of Lading, plaintiff's goods were picked up at the Alabama Transfer & Warehouse Company for shipment to New Hampshire. Unfortunately, the van transporting the goods was involved in a fire and many of the items were damaged or destroyed.

After the loss, plaintiff filed a Claim for Personal Property Against the United States and received $10,000 from the Government pursuant to the terms of 31 U.S.C. §§ 240–43.[4] In conjunction with this claim, plaintiff executed an assignment to the United States of any right she had to further recovery against any carrier or private insurer of her property and also signed an agreement to remit to the United States any monies received, said remission not to exceed the amount ($10,000) already obtained from the United States.[5]

The United States then made demand upon Greyhound in the amount of $2,896.03 (computed at the rate of $.60 per pound contained in Military and Government Rate Tariff No. 1–F) for the loss of plaintiff's goods. Greyhound paid this amount to the U.S., which in turn gave this money to plaintiff since her damages exceeded the $10,000 she already had received from the Air Force.

Before the district court, Greyhound contended, *inter alia*, that its liability was limited to $.60 per pound or $2,896.03. The court, however, found that the failure of both the plaintiff and the Air Force to agree specifically in writing to any limitation of liability was fatal to the defendant. Accordingly, the court directed a verdict on the issue of liability in plaintiff's favor.

The jury, considering only the issue of damages, returned a verdict in plaintiff's favor for $13,405.09. The court reduced this by $2,896.03 since Greyhound had already paid such amount to the Air Force. Judgment was then entered for the plaintiff for $10,509.06. Greyhound then filed a

ment. Greyhound's claims representative, after notification of the van fire, wrote the Traffic Management Office at Maxwell Air Force Base for a certificate in lieu of the lost original. Such certificate was received—35 days after the van fire—but still did not contain a released value of the goods. Apparently sometime thereafter, the $.60 figure was inserted on Greyhound's photocopy.

4. The statute provides in pertinent part:

Settlement of claims.—(a)(1) Under such regulations as the Secretary of a military department, or the Secretary of the Treasury with respect to the Coast Guard when it is not operating as a part of the Navy, may prescribe, he or his designee may settle and pay a claim arising after the effective date of this Act (Aug. 31, 1964) against the United States for not more than $10,000.00 made by a member of the uniform services under the jurisdiction of that department or the Coast Guard or by a civilian officer or employee of that department or the Coast Guard, for damage to, or loss of personal property incident to his service. If the claim is substantiated and the possession of that property is determined to be reasonable, useful, or proper under the circumstances, the claim may be paid or the property replaced in kind. This subsection does not apply to claims settled before its enactment.

5. The Claim filed by the plaintiff contains the following language:

I hereby assign to the United States, to the extent of any payment on this claim accepted by me, all right, title, and interest in and to any claim I have against any carrier, insurer, or other party arising out of the above-described incident and will, upon request, furnish such evidence as may be required to enable the United States to enforce such claim.

The plaintiff also executed a Statement by Claimant which provides:

I, Juliet M. D. Anton, understand that by virtue of filing a claim against the Government, I have assigned to the Government any right which I may have to recover from any carrier or private insurer of my property.

I further agree to refund to the United States or submit to deduction from my pay account any such recovery received from any carrier or insurer in an amount not to exceed the amount received from the United States.

Motion to Alter or Amend Judgment in accordance with Rule 59(e) of the Federal Rules of Civil Procedure to have the judgment reduced by $10,000 by virtue of plaintiff's assignment of her rights to the U.S. Air Force and her receipt of $10,000 from the Air Force. This motion was denied. Defendant then timely filed this appeal.

Greyhound raises two arguments on appeal. First, that the district court erred, as a matter of law, in concluding that Greyhound failed properly to limit its liability pursuant to the terms of the Carmack Amendment. In this connection, defendant contends that it need only establish (A) it had an approved tariff schedule on file with the Interstate Commerce Commission (ICC) and (B) the shipper's goods were transported pursuant to the applicable tariff schedule. There is no requirement, defendant states, that the shipper actually sign the bill of lading which establishes the limits of a carrier's liability.

Secondly, Greyhound contends that, even if it failed properly to limit its liability, the judgment should be reduced by $10,000. Defendant argues that when plaintiff received $10,000 from the Air Force, she assigned her rights to any further recovery up to that amount to the United States Government. Thus, since the United States had previously demanded and was paid $2,896.03 by Greyhound, defendant argues, the U.S. released Greyhound from any further liability as to the first $10,000.

Plaintiff predictably replies that the district court was correct in concluding that Greyhound failed properly to limit its liability pursuant to the terms of the Carmack Amendment.[6] Plaintiff, relying on the wording of the amendment as well as case law construing it, argues that there are four steps a carrier must take in order to limit its liability: (1) maintain approved tariff rates with the ICC; (2) obtain the shipper's written declaration of his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

Plaintiff also argues that the $10,000 received from the Air Force pursuant to 31 U.S.C. §§ 240–43 does not entitle Greyhound to a reduction of the jury verdict. The monies received under the statute are in the nature of an insurance benefit, argues plaintiff, and thus the "collateral source rule" applies to estop a tort-feasor from escaping liability merely because an insured has received a benefit from a collateral source. Additionally, the collateral source rule is not affected by the fact that an insurer is entitled to be subrogated to the rights of the insured. The question of the right to the proceeds of the recovery, contends plaintiff, is a matter solely between the insured (plaintiff) and the insurer (the Air Force).

The extent of Greyhound's liability in the instant case is controlled by the terms of the Carmack Amendment to the Interstate Commerce Act. Although the amendment provides that when an interstate carrier receives property for transportation, it shall issue a receipt or bill of lading therefor and "shall be liable for the full, actual loss, damage or injury to property delivered to them, a carrier's liability may be limited by *agreement* upon a 'released value' of a shipment." *Strickland Transp. Co. v. United States*, 334 F.2d 172, 175 (5th Cir. 1964) (emphasis added). Limitation of liability can be effected only when in compliance with an ICC "order authorizing special rates dependent upon either a declaration of value by the shipper *in writing* or a released value *in writing*." *Glickfield v. Howard Van Lines*, 213 F.2d 723, 725 (9th Cir. 1954) (emphasis in original). The shipper necessarily may "agree in writing" only after he has had the opportunity to inspect the written terms of the agreement. *See, e. g., Rhoades, Inc. v. United Air Lines, Inc.*, 340 F.2d 481, 486 (3rd Cir. 1965). "Although action in writing by the shipper is plainly required, his signature is not necessary but it does furnish good evidence that he did declare or agree in writing." *Caten v. Salt City Movers & Storage*

6. *See*, n. 1, *supra*.

Co., 149 F.2d 428, 432 (2d Cir. 1945); *accord, American Ry. Express Co. v. Lindenburg,* 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414 (1923). "Congress no doubt used these words to indicate that a shipper should agree in the same sense that one agrees or assents to enter into a contractual obligation." *Chandler v. Aero Mayflower Transit Company,* 374 F.2d 129, 135 (4th Cir. 1967); *Rhoades, Inc. v. United Airlines, supra* at 486. Such assent is effective, however, only if given after "a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge . . ." *New York, N.H. & H. R.R. Co. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953).

It is conceded by plaintiff that Greyhound maintained tariff rates approved by the ICC dependent upon the declared value of its shipments. It is further agreed by both parties that plaintiff's goods were shipped under the authority of the Government Bill of Lading which was not originated by Greyhound and that there is no writing of plaintiff indicating any assent to a limitation of liability on the part of Greyhound in the event of loss or destruction of her goods.

■ It is true, as defendant points out, that shippers are charged with notice of terms, conditions, and regulations contained in the tariff schedule pertaining to a carrier's liability which in turn affect the rates charged the carriage of goods. *American Ry. Express Co. v. Daniel,* 269 U.S. 40, 46 S.Ct. 15, 70 L.Ed. 154 (1925); *American Ry. Express Co. v. Lindenburg,* 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414 (1923). However, a carrier in order properly to limit its liability must do more than merely show that it maintained appropriate tariff schedules with the ICC.[7] A carrier's arbitrary limitation of its liability for full actual damages is not effective unless the shipper enters into an agreement limiting that liability "as the result of an equally certain specified action . . . in respect to a voluntary valuation of his goods." *Caten v. Salt City Movers & Storage Co.,* 149 F.2d 428, 432 (2d Cir. 1945).

■ In other words a carrier cannot limit liability by implication. There must be an absolute, deliberate and well-informed choice by the shipper.

■ The record is clear that at no time did either plaintiff or the Air Force (assuming *arguendo* the Air Force to be plaintiff's agent) declare in writing the released value of the goods as plainly required by the terms of the Carmack Amendment.[8] As the *Caten* court succinctly stated:

> To permit a carrier, without any action whatever by the shipper in respect to valuation in writing to limit its liability on the basis of declared or released value on which the rate was charged would be to ignore entirely the statutory requirement that the shipper must make the declaration or agreement. *Id.* at 432.

It necessarily follows from the absence of any written agreement as to the declared or released value of plaintiff's goods that there was no "fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge . . . ."[9] *New York, N.H. & H. R.R. Co. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953). Moreover, the evidence at trial indicated that Greyhound failed even to *issue,* as plainly required by the terms of the Carmack Amendment, a receipt or bill of lading for plaintiff's goods.[10] Rather, it was agreed by both parties that plaintiff's goods traveled under the authority of the Government Bill of Lading issued not by Greyhound but instead by the Air Force. *See, Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129 (4th Cir. 1967).

---

7. Point (1), p. 107 *supra.*

8. Point (2), p. 107 *supra.*

9. Point (3), p. 107 *supra.* We would add that there was also no indication of any special circumstances, such as an express or implied waiver of choice, which might, arguably, suspend the operation of the "opportunity to choose" rule.

10. Point (4), p. 107 *supra.*

Greyhound argues that its position is supported by two cases, *Holmes v. National Van Lines, Inc.*, 55 Wash.2d 861, 350 P.2d 864 (1960) and *Normann v. Burham's Van Service*, La.App., 73 So.2d 640 (1954). In *Holmes*, the shipper, an employee of Boeing Airplane Company, was being moved from Florida to Seattle, Washington. The court held, although the shipper himself had not entered into an agreement with the carrier with respect to a limitation of liability, Boeing as the shipper's agent had done so. The court held that Boeing had knowledge of the proposed limitation of liability; was given a choice to contract with, or without liability; and the limitation was agreed to in writing. In the instant case it is clear, even assuming the Air Force to be plaintiff's agent, no agreement in writing was entered into between the parties respecting a limitation of liability. Further, there is no indication that there was any choice to contract with, or without, the limitation of liability given by Greyhound to plaintiff or the Air Force.

In *Normann*, the plaintiff was a Naval officer who was transferred from Portsmouth, Virginia to New Orleans, Louisiana. In that case, the court found determinative the fact plaintiff himself signed the bill of lading which had a thirty cents per pound liability limitation printed thereon. Thus, there was an agreement in writing signed by plaintiff assenting to a limitation of liability on the part of the shipper, a fact that is absent in the instant case.

It is thus clear that Greyhound had within its power the ability effectively to limit its liability with respect to the carriage of plaintiff's goods in the event of their loss or destruction. The terms of the Carmack Amendment are clear and unambiguous. Had Greyhound complied with such requirements, it easily could have limited its liability; this it failed to do. Greyhound has labored mightily, but it simply cannot get around the requirements of the Amendment. As a result, we find that the district court was correct, as a matter of law, in concluding that Greyhound had failed properly to limit its liability in the instant case.

█ This conclusion is buttressed by the fact that arrangements limiting liability on the part of interstate carriers is a carefully defined exception to the general thrust of Section 20(11) of the Interstate Commerce Act placing on the carrier absolute liability for loss or damage of a shipper's goods.[11] Consequently, such arrangements must be carefully scrutinized and where they fail, as in the present case, to fully comply with the provisions of the Carmack Amendment, it is clear they are ineffective to limit a carrier's liability.

It remains to discuss Greyhound's contention that the jury verdict in plaintiff's favor be reduced by $10,000. Essentially Greyhound contends plaintiff assigned to the United States all rights to any subsequent recovery when she received $10,000 pursuant to 31 U.S.C. §§ 240–43. As a result of this assignment, the United States made demand on Greyhound and was paid $2,896.03 for plaintiff's loss. Defendant now contends that this action extinguished any further liability on the part of Greyhound up to the extent ($10,000) that plaintiff had previously assigned to the United States and the judgment should accordingly be reduced by such amount.

█ Defendant's position fails to appreciate the character of the benefits received under 31 U.S.C. §§ 240–43. In reality, such benefits are comparable to those received under a normal insurance policy. A claimant need not prove wrongdoing or negligence; one need only prove loss as is common under most insurance policies. Under this analysis, it is clear that the "collateral source rule" applies to any monies received by plaintiff from the Air Force. The collateral source doctrine was formulated to prevent a tort-feasor from escaping the consequences of his actions where a victim has received benefits from a collateral source. *See, e. g., Aluminum*

---

11. *See* 49 U.S.C.A. § 20(11). The general rule is that any limitation on the liability of an interstate common carrier for property being transported "without respect to the manner or form in which it is sought to be made is . . . unlawful and void." 49 U.S.C.A. § 20(11).

**110**

*Product Distributors, Inc. v. Aaacon Auto Transport, Inc.*, 404 F.Supp. 1374 (W.D.Okl. 1975), *aff'd*, 549 F.2d 1381 (10th Cir. 1977).

Indeed, since plaintiff is now required to reimburse the Air Force out of any recovery she might receive up to $10,000, failure to apply the collateral source rule could actually prevent her from recovering in full. The question of the right to the proceeds of the recovery is a matter between plaintiff (the insured) and the Air Force (the insurer). *Rexroad v. Kansas Power & Light Co.*, 192 Kan. 343, 388 P.2d 832 (1964). As long as the tort-feasor (Greyhound) is protected against a second recovery on the part of the insurer which has paid the claim, the matter of distribution of the proceeds is one that concerns the plaintiff and the Air Force alone. *Powers v. Ellis*, 231 Ind. 273, 108 N.E.2d 132 (1952); *Rexroad v. Kansas Power & Light Co., supra.* Indeed, the trial court recognized this when it ordered plaintiff's counsel to contact the Air Force regarding the verdict.

In summary, we hold that plaintiff's receipt of $10,000 from the Air Force does not entitle Greyhound to a reduction in damages, since such money is in the nature of an insurance benefit, has no effect on Greyhound's liability in this case, and in any event, plaintiff is contractually obligated to refund the initial $10,000 to the Air Force.

Accordingly, upon careful consideration of all the parties' submissions and briefs, with oral argument, we hold that the carrier failed properly to limit its liability and that the shipper is entitled to recover the full value of her goods, not offset by any monies received by plaintiff from the Air Force.

*Affirmed.*