UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff, Appellant,

v.

PAUL ARPIN VAN LINES, INC., Defendant, Appellee.

No. 80–1795.

United States Court of Appeals, First Circuit.

Argued April 9, 1981.

Decided June 23, 1981.

Leonard S. Wissow, Philadelphia, Pa., with whom Wissow & Odza, Philadelphia, Pa., John A. Baglini, and Higgins & Slattery, Providence, R. I., were on brief, for plaintiff, appellant.

Guy J. Wells, Providence, R. I., with whom Gunning, LaFazia & Gnys, Inc., Providence, R. I., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The question is whether the government and a trucking company may, in the absence of an authorizing order from the Interstate Commerce Commission, enter into a contract limiting a trucker's liability for its damage to government cargo in return for reduced trucking rates to the government. We decide they may so contract and affirm the judgment of the district court.

I

Lt. Col. James F. Sherry, U.S.M.C., who is not a party to this suit, was reassigned to duty from Concord, California to Newport, Rhode Island. He therefore was eligible to be moved at government expense. *See* 37 U.S.C. § 406(b) (uniformed service members entitled to transportation of household effects in connection with changes of station). Col. Sherry applied for government shipment of his belongings on DOD Form 1299. A government transportation officer then contracted with Suhr Transport—apparently an organization with which appellee is an associated member trucking firm—for the carriage of Col. Sherry's household effects. A government bill of lading was issued on June 15, 1977, which purported to set a ceiling on appellee's liability for damage to these effects of 60 cents per pound.

The parties agree that this bill of lading incorporated a preexisting ICC filing called "Military Rate Tender No. 1–H", ICC No.

35 ("MRT 1–H"), together with its subsequent amendments. This filing states

> "[t]his tariff represents an exception to applicable rates on file with the Interstate Commerce Commission for the account of carriers named herein and names *reduced rates* under authority of *Section 22 of the Interstate Commerce Act*,[1] applicable to a Government Bill of Lading . . . ." [Emphasis added].

The tender also purports to specify that shipments moving on government bills of lading "will be deemed released to a value of 60 cents per pound per article, unless otherwise specifically annotated thereon."

It is stipulated that Col. Sherry knew appellee was taking only this limited responsibility for his possessions. He signed DOD Form 1797, a "Personal Property Counseling Checklist", which included two entries entitled "[c]arrier, storage firm & Govt liability for loss or damage" and "[l]imitations on Govt liability". He, however, was not forced to bear the remaining risk of loss himself. He had the opportunity to ship at rates which provided for a less limited carrier liability. Col. Sherry also was aware that he had a statutory right to claim reimbursement from the government for up to $15,000 of any uninsured loss. *See* 31 U.S.C. § 241. He in fact decided to augment this statutory protection by purchasing from the appellant insurance company a $30,000 policy covering the transport of his belongings. Appellant concedes that its rates for this insurance were calculated on the assumption that appellee's liability for any damaged cargo would be limited to 60 cents per pound.

On July 1, 1977, Col. Sherry's belongings—valued in excess of $30,000—were destroyed by fire in the course of transit. Appellant paid Col. Sherry $30,000 under its policy. It obtained from him a subrogation agreement giving it the right to proceed against appellee. Appellant then sued appellee for $30,000 and, after answer and stipulations of fact, moved for summary judgment in that amount. Appellee admitted liability for $5916—the amount if the 60 cent per pound limit were effective—but moved for summary judgment in its favor regarding additional sums. The district court granted the appellee's motion and denied the appellant's motion.

## II

█ Appellant claims that the 60 cent per pound cargo liability limitation, that all parties to the contract thought protected appellee, in reality does not validly do so. The argument is that the limitation does not comply with 49 U.S.C. § 20(11). In relevant part this section voided liability limitations by common carriers, *except* with respect to property

> "concerning which the carrier shall have been . . . expressly authorized or required *by order* of the Interstate Commerce Commission to establish and maintain rates dependent upon . . . the released value of the property, . . . and any tariff schedule which may be filed with the commission pursuant to such *order* shall contain *specific reference thereto* . . . ." 49 U.S.C. § 20(11) [emphasis added].

MRT 1–H and its amendments, which together establish the liability limit here at issue, neither were filed pursuant nor made specific reference to an ICC order. Appellant concludes that appellee must be liable for the whole cargo loss since failure to comply with section 20(11) voids the appellee's attempt to limit its responsibility.

This appellant insurance company made the same claim to a panel of the Third Circuit one year ago. In a careful and scholarly opinion gathering unanimous support, Judge Gibbons rejected it and found a

---

1. 49 U.S.C. § 22 specified that

"nothing in this part [49 U.S.C. §§ 1–5, 5b–15a, 16, 17–23, 26 & 27] shall prevent the carriage . . . of property . . . at reduced rates for the United States . . . ."

In 1978 Congress recodified without substantive change the Interstate Commerce Act at 49 U.S.C. §§ 10101–11916. As the events in this case predate this change, we refer to the taxonomy in effect at the time unless otherwise noted.

similar liability limitation to be effective.[2] *Howe v. Allied Van Lines*, 622 F.2d 1147 (3d Cir.), *cert. denied*, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980). To summarize, the *Howe* court found that section 20(11)'s application is limited by section 22.[3] It reasoned that the "early history of section 22 compels the conclusion that Congress intended to preserve the federal government's power to bargain with carriers, or to impose upon carriers preferential rates and terms—free of the antidiscrimination prohibitions of the Interstate Commerce Act, and free of regulation by the Commission which the Act created." *Id.* at 1154. Section 20(11), on the other hand, was in relevant part designed to prevent the rate discrimination that threatened when *private* parties were allowed to contract for special rates based on declared value. *Id.* at 1157. Section 20(11) thus did not "intend to modify the longstanding policy that the federal government was not bound by the antidiscrimination principle." *Id.* at 1158. Since "section 20(11) itself recognized the interrelationship between the declared value of property and the rate charged for carriage", *id.*, section 22's exception for reduced government shipping rates concomitantly excepted from section 20(11)'s requirements provisions for liability limitations in government bills of lading. *Howe* therefore decided that the requirements of section 20(11) have no application to cases,

like this one, that involve government bills of lading.[4]

Appellant criticizes *Howe's* reasoning on several grounds. First it claims that *Howe* ignored the language of both section 20(11) —a manifestly incorrect claim, *see* 622 F.2d at 1150–58—and 49 U.S.C. § 319.[5] Section 319 simply extended section 20(11) to trucking *on the same basis* that it originally applied to railroads and others. It does not alter the *Howe* analysis.

Second, appellant argues that implied exceptions to express statutory provisions are not favored. This is certainly true. Section 22, however, creates an express exception to several sections of the Interstate Commerce Act, including section 20(11). The problem thus is to divine the extent of this express exception. For this purpose, recourse to legislative history is a traditional tool. We find it to have been well used in the *Howe* analysis.

Next, appellant argues that two sections of the Motor Carrier Act of 1980, Pub.L.No. 96–296, 94 Stat. 793 (1980), counter *Howe's* analysis by demonstrating that liability limitations in government shipping contracts remain within the requirements of section 20(11). This conclusion does not follow from the first section to which appellant directs our attention: Pub.L.No.96–296, § 5(a)(3), 94 Stat. 795 (codified at 49 U.S.C. § 10922(b)(4)(C)),[6] which is concerned with

---

**2.** Appellee made no claim of collateral estoppel in its answer and thus has waived this defense for purposes of this appeal. *See* Fed.R.Civ. Proc. 8(c); *Huffman v. Pursue Ltd.*, 420 U.S. 592, 608 n. 19, 95 S.Ct. 1200, 1210 n. 19, 43 L.Ed.2d 482 (1975).

**3.** *See* note 1 *supra*.

**4.** *Howe's* analysis did not cite but is supported by an opinion of the Comptroller General. 38 Comp.Gen. 768, 770 (1959) (section 22 "ought not to be determined administratively to be affected by the proviso in section 20(11) limiting released valuation rates and ratings to those authorized or required by the Interstate Commerce Commission").

**5.** This section specified that section 20(11) "shall apply with respect to common carriers by motor vehicle with like force and effect as in the case of those persons to which [section 20(11) is] specifically applicable."

**6.** 49 U.S.C. § 10921 provides, *inter alia*, that persons generally may provide trucking service subject to ICC jurisdiction only if they hold an authorizing certificate. Section 10922(b) provides:

"(b)(1) [T]he Interstate Commerce Commission shall issue a certificate to a person . . . if the Commission finds—

(A) that the person is fit, willing, and able . . . and

(B) . . . that the service proposed will serve a useful public purpose, responsive to a public demand or need . . . .

. . . .

"(4) The provisions of paragraph (1) of this subsection (*other than subparagraph (A)*) shall not apply to applications under this subsection for authority to provide—

. . . .

(C) transportation for the United States Government of property other than *used household goods*, hazardous or secret materi-

the conditions under which trucking firms may enter a market rather than with the terms that they may offer once they have done so. *See* H.R.Rep.No.96–1069, 96th Cong., 2d Sess. 12–16, *reprinted in* [1980] U.S.Code Cong. & Ad.News 2283, 2294–98 (entry policy for carriers of United States used household goods to be governed by "public convenience and necessity requirement" rather than by more limited "fit, willing, and able" test). Neither does it follow from the other section that appellant invokes, section 12 of the 1980 Act, Pub.L. No.96–296, § 12, 94 Stat. 802 (codified at 49 U.S.C. § 10730(a) & (b)).[7] This section retains the previous section 20(11)'s requirements (of prior ICC permission and specific reference in the tariff to that permission) for the transportation of household goods generally. It mentions no distinction between household goods shipped by the federal government and household goods shipped by others. *See* H.R.Rep.No.96–1069, 96th Cong., 2d Sess. 25–26, *reprinted in* [1980] U.S.Code Cong. & Ad.News 2283, 2307–08 (discussing liability limitations regarding carriage of household goods without differentiating on basis of United States as shipper). Section 12 of the new Act therefore does not speak to the distinction that *Howe* found section 22 to create in prior law. *See* 49 U.S.C. § 10721(b)(1) (West Supp.1981) (rewording and reenacting relevant portion of § 22); H.R.Rep.No. 95–1395, 95th Cong., 2d Sess. 4, *reprinted in* [1978] U.S.Code Cong. & Ad.News 3009, 3013 (purpose of 1978 act "to restate in comprehensive form, *without substantive change*, the Interstate Commerce Act") (emphasis added). These amendments consequently do nothing to suggest error in *Howe's* reasoning.

Finally, appellant in its reply brief makes the policy argument that the ICC's prior judgment as to the fairness of reduced rates based on limited liability is essential since "neither the Department of Defense nor any other shipper is sophisticated enough to determine the dimensions of the risk it is assuming as a self-insurer for the amount in excess of the carrier's liability". This is an ironic argument from a company that evidently believes *itself* competent to engage in the business of determining the risks that shippers face. Appellant informs us the "Department of Defense is the nation's single largest shipper of household goods." We detect nothing that would prevent the Department or other government agencies from calling upon the ICC if they shared the appellant's belief in their own helplessness and in the essentiality of the ICC's role. This argument does not call into question the analysis in *Howe*.

We decide that the *Howe* decision should control this case. As *Howe* points out, 622 F.2d at 1158, our earlier opinion in *Anton v. Greyhound Van Lines*, 591 F.2d 103 (1st Cir. 1978), discussed carrier liability under a government bill of lading without considering the effect of section 22—the key provision for the *Howe* analysis. Our *Anton* decision therefore provides only an incomplete analysis. That case does differ from the one at bar. Neither party in *Anton* had filled in the space on the bill of lading to reflect the carrier's asserted 60 cent liability limitation, and thus there was no "absolute, deliberate and well-informed choice by the shipper" to limit liability. *Id.* at 108. Since the case is distinguishable, we have no occasion to reconsider its teaching. It does not, in any event, apply to the case at hand.

---

als, and sensitive weapons and munitions . . . ." [Emphasis added].

7. "§ 10730. Rates and liability based on value
   (a) The Interstate Commerce Commission may require or authorize a carrier (*including a motor common carrier of household goods* but excluding any other motor common carrier of property and excluding any rail carrier) . . . to establish rates for transportation of property under which the liability of the carrier for that property is limited . . . . A tariff filed with the Commission . . . shall refer specifically to the action of the Commission under this section.
   (b)(1) Subject to the provisions of paragraph (2) of this subsection, a motor common carrier . . . may . . . establish rates for the transportation of property (*other than household goods*) under which the liability of the carrier for such property is limited . . . ." [Emphasis added].

## III

Appellant makes a separate argument that the 60 cent limitation is not effective as a matter of contract interpretation. It points to the following contractual language:

"ITEM 1 LIMITATION OF CARRIER LIABILITY

Rates and charges in this tariff apply without additional valuation charges when shipment is released to a value of 60 cents per pound per article . . . .

The carrier accepts property for shipment on the government bill of lading under the following terms and conditions:

(a) Carrier's legal liability for loss or damage to goods will be the same as set forth in the Interstate Commerce Act (*Title 49, USC, Section 20(11)*), limited to the amount per pound, per article (see Note) shown herein.

. . . .

NOTE: Definition of the term Item or Article

. . . .

For the sake of clarity, the following examples apply. These examples identify carriers maximum liability . . . .

(1) WHEN RELEASED AT 60 CENTS PER POUND PER ARTICLE: Bed assembly, weight 100 pounds—Headboard lost or damaged, weight 50 pounds. Carrier's maximum liability for loss or damage to the headboard would be 60 cents times 100 pounds (weight of total bed assembly) or $60.00.

(2) WHEN RELEASED AT 60 CENTS PER POUND PER ARTICLE: Barrel of dishes, weight 50 pounds—Several dishes broken weighing 2 pounds. Carrier's maximum liability for broken dishes within the barrel would be 60 cents times 50 pounds or $30.00.

(3) WHEN RELEASED AT 60 CENTS PER POUND PER ARTICLE: Carton or package, weight 60 pounds—Fishing reel missing, weight 1 pound. Carrier's maximum liability would be 60 cents times 60 pounds or $36.00." [Emphasis added].

The appellant argues that the italicized reference to section 20(11) demonstrates the contractual intent of the parties to make the 60 cent limitation contingent upon the tariff's specific reference to an effective ICC order. *See* 49 U.S.C. § 20(11).

This is a frivolous argument. The reference to section 20(11) is modified by the final clause of the sentence, which makes effective the limitation specified on the face of the bill of lading and understood at the relevant times by both Col. Sherry and the appellant itself.

*Affirmed.*