DOUCET, Judge.
This is a subrogation suit brought by State Farm Mutual Fire and Casualty Company (hereinafter referred to as State Farm), against Jim Shapkoff and Sherwood Van Lines, Inc. (hereinafter referred to as Sherwood), to recover the amount that State Farm paid to its insureds, Herman and Joanne Willis, for the loss of their household belongings. The Willis’ household belongings were transported to Lees-ville, Louisiana by Sherwood and were stored in a warehouse owned by Jim Shap-koff. The warehouse, along with the Willis’ household belongings, was destroyed by fire.
The facts show that in mid 1979, Herman Willis, a member of the United States Army, was assigned by the Army to its military installation at Fort Polk, Louisiana. Upon receipt of orders for assignment, Major Willis requested that the Department of Defense arrange for the transportation of his family’s household belongings from Maryland to Louisiana.[1]
Sherwood was engaged by the Department of Defense for this purpose. The expense of the move and all costs associated with the move were paid by the United States Army. The shipment was received by Sherwood on August 16, 1979. In connection with this move, the Government Bill of Lading was issued by Col. Donald H. Mensch and the Bill of Lading bearing number M2120654 identified the shipper as BGAC Joint Personal Property Shipping Office, Washington, D.C. An internal control record for the benefit of Sherwood was prepared and identified as Sherwood’s Bill of Lading. This internal control record identifies Herman F. Willis as the shipper, but also identifies the Government Bill of Lading number M2120654 and the tariff rate 1-Y.
*67 All communication regarding the shipment and storage occurred between Sherwood as the carrier and the Department of Defense through its agency, the Joint Personal Shipping Office, the shipper.
Upon arrival at Fort Polk, Louisiana and by order of the Transportation Officer at Fort Polk, pursuant to a storage and transit certificate, the goods were stored temporarily and weighed. The shipment was certified by the Transportation Officer to weigh 13,600 pounds.
The Willis’ household belongings, along with the warehouse in which the belongings were temporarily being stored, were destroyed by fire on January 1,1980. As a result of the fire, the Willises were paid the sum of $15,000, in the aggregate, by the United States Department of Defense. 31 U.S.C. § 241. They also received $20,700 from State Farm under a homeowners policy which they had purchased on December 21, 1979.
The defendant carrier, Sherwood, reimbursed the United States the sum of $12,-087.42 through a set-off agreement. This represents $.60 per pound, the released value of the shipment recited by the bill of lading, or $8,160.00 plus $3,927.42, the amount charged for the freight by the carrier.
State Farm filed suit in the 30th Judicial District Court against Jim Shapkoff, as owner of the warehouse, and Sherwood, as the carrier seeking recovery of the amount State Farm paid its insured. Following a trial on the merits, the lower court judge ruled in favor of defendants, Jim Shapkoff and Sherwood, rejecting the demands of State Farm. It is from this judgment that plaintiff appeals.
On appeal, plaintiff-appellant urges that “The trial court erred in holding that the limitation of liability set forth in the government bill of lading is valid.” We disagree.
In support of plaintiff’s contention that the limitation of liability set forth in the government bill of lading is invalid, plaintiff first contends that Herman F. Willis, instead of the government, was the shipper of the goods that were destroyed. Plaintiff adds that since there are requirements of law which strictly regulate such transactions between private individuals and carriers, and because these strict requirements were not complied with, the carrier did not validly limit its liability.
The evidence that plaintiff relies on to establish plaintiff as the shipper is one document; a form prepared by Sherwood as an internal control record. Granted that this document specifies Mr. Willis as the shipper, however, the document clearly identifies the documents which actually control the relationship of the parties to this transaction, namely Government Bill of Lading number M2120654, and government rate tender 1-Y. Additionally, plaintiff relies on Anton v. Greyhound Van Lines, Inc., 591 F.2d 103 (1st Cir.1978) to support its contention that Mr. Willis should be regarded as the shippey. In Anton, supra, the plaintiff was allowed to recover from the carrier the full value of her household goods not paid by the Air Force. However, in a more recent decision, Howe v. Allied Van Lines, 622 F.2d 1147 (3rd Cir.1980) cert. den. 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289, the court citing and analyzing Anton, supra, specifically observed:
“The court mistakenly refers to the military person as the shipper, although it seems clear that the goods were, as here, shipped on a government bill of lading at a declared value of 60 cents per pound pursuant to a general tender to DOD. No mention is made of the opinion of section 22 (49 USC 10721) and apparently it was not called to the court’s attention. Had it been, we are confident that the result in Anton would have been different.”
Thus, based on recent jurisprudence, the fact that a government bill of lading was issued specifying the BGAC Joint Personal Property Shipping Office in Washington, D.C. as the shipper, the fact that all communication regarding the move occurred between the carrier and the Department of Defense through its Agency, the Joint Personal Property Shipping Office, and the fact that the expense of the move and all *68 costs associated with the move were paid by the United States Army, we conclude as did the lower court that the government, instead of Mr. Willis, was the shipper.
Having concluded that the government was the shipper in the instant situation, we must next address the question of whether the strict requirements of 49 U.S. C. § 20(11) (49 U.S.C. § 11707) apply to Government Bills of Lading. This very question was addressed in Howe, supra. The court in Howe concluded that 49 U.S.C. § 20(11) (49 U.S.C. § 11707, 49 U.S.C. § 10730) does not apply to Government Bills of Lading. Thus, transactions of this sort are not governed by the stringent requirements of 49 U.S.C. § 20(11) (49 U.S.C. § 11707, 49 U.S.C. § 10730).
Moreover in United States Automobile Assn. v. Paul Arpin Van Lines, Inc., 652 F.2d 198 (1st Cir.1981), a military officer applied for government shipment after being reassigned to another military installation. A government bill of lading was issued containing a rate tender similar to the one issued in the instant case. The Officer’s belongings were subsequently destroyed by fire in transit. In rejecting the contention that 49 U.S.C. § 20(11) (49 U.S. C. § 11707, 49 U.S.C. § 10730) precluded limitation of liability of the carrier, the court citing and analyzing Howe, supra, stated:
“To summarize, the Howe court found that section 20(ll)’s application is limited by section 22.3 It reasoned that the ‘early history of section 22 compels the conclusion that Congress intended to preserve the federal government’s power to bargain with carriers, or to impose upon carriers preferential rates and terms— free of the antidiscrimination prohibitions of the Interstate Commerce Act, and free of regulation by the Commission which the Act created.’ Id. at 1154. Section 20(11), on the other hand, was in relevant part designed to prevent the rate discrimination that threatened when private parties were allowed to contract for special rates based on declared value. Id. at 1157. Section 20(11) thus did not ‘intend to modify the longstanding policy that the federal government was not bound by the antidiscrimination principle.’ Id. at 1158. Since ‘section 20(11) itself recognized the interrelationship between the declared value of property and the rate charged for carriage’, id., section 22’s exception for reduced government shipping rates concomitantly excepted from section 20(ll)’s requirements provisions for liability limitations in government bills of lading. Howe therefore decided that the requirements of section 20(11) have no application to cases, like this one, that involve government bills of lading.” (emphasis added)
Thus, based on the above and foregoing, we conclude that Sherwood Van Lines, Inc. was exempted from the stringent requirements of 49 U.S.C. § 20(11) (49 U.S.C. § 11707, 49 U.S.C. § 10730). As such, we find that its limitation of liability set forth in the government bill of lading is valid.
The Willis shipment was moved pursuant to a government bill of lading issued pursuant to a government rate tender 1-Y naming Herman F. Willis, Jr. as consignee and the government as shipper. Government Rate Tender, I.C.C. No. 1-Y provides the following limitation:
“(A) Shipments moving on Government Bills of Lading, Government Purchase Orders or Commercial Bills of Lading endorsed to be converted to a Government Bill of Lading prior to delivery, will be deemed released to a value of 60 cents per pound per article, unless specifically annotated on the Government Bill of Lading.
(d) The carrier’s maximum liability shall be either, (1) $1.25 times the net weight (in pounds) of the shipment or the declared lump sum value, whichever is greater; or (2) sixty (60) cents per pound for the net weight of any lost or damaged article or articles if the shipment has not been expressly released to a declared lump sum value.
(E) The released value and the carrier’s maximum liability (whether or not loss or damage occurred from carrier negligence), as determined under this item, shall apply to claims resulting from the *69 performance by carrier of any services, including accessorial services, which carrier has contracted to perform.”
The Government bill of lading sets forth the following: “ICC GRT 1-Y” which is an abbreviation for Interstate Commerce Commission Government Rate Tender 1-Y. In the internal bill of lading of Sherwood the tariff is referred to twice as 1-Y. Neither bill contains any provision which precludes the application of that rate tender. In the absence of any specific provision to the contrary, the shipment is deemed released at 60 cents per pound per article.
Pursuant to this limitation of liability, the government instituted a set-off action against Sherwood to recover the full amount allowable as damages under this tariff. Because the shipper cannot recover more than 60 cents per pound, the government recovered the amount of 13,600 pounds (the weight of the shipment) times 60 cents per pound from Sherwood on the Willis shipment.
As previously stated, State Farm instituted a subrogation suit against Sam Shapkoff as owner of the warehouse and Sherwood as the carrier seeking recovery of the amount State Farm paid its insured, the Willises. As correctly stated by the trial judge:
“The Willises are not parties to this suit, nor did they contract directly with either of the defendants. While State Farm, under the subrogation, is entitled to whatever rights and privileges they may have had, it can ascend to no higher right. Having opted for the shipment to be handled by the government they were bound, as is their subrogee, by regulations appertaining thereto. Since there was no privity of contract between them and the defendants, they properly pursued recourse with or through the Government, to which they had entrusted the responsibility regarding the shipment, and settled for $15,000, the maximum at that time. 31 U.S.C. 240 through 242.”
Finally, plaintiff asserts that under the law of deposit, it is entitled to recover the amount it paid to its insured. We disagree. As correctly stated by the trial court judge in his written reasons: “The provisions thereof must yield to the agreements, commitments and limitations under the supersessive federal statutes and regulations referred to above....”
Accordingly, the judgment of the trial court rejecting State Farm’s demands is affirmed. All costs are assessed to State Farm.
AFFIRMED.

. When a member of the Military is transferred to a new permanent duty station, the Army is required to provide transportation. The service member has the option of moving his goods by dealing directly with the carrier and then receiving reimbursement of his expenses, or, as in this case, letting the government do it. 37 U.S.C. § 406(b).