USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2428

 HOLLINGSWORTH & VOSE COMPANY,

 Appellant,

 v.

 A-P-A TRANSPORTATION CORP.,

 Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert B. Collings, U.S. Magistrate Judge]

 Before

 Boudin, Circuit Judge,
Schwarzer, Senior District Judge,
and Saris, District Judge.

 Leonard M. Singer with whom Heidlage & Reece, P.C. was on
brief for appellant.
 Thomas J. Hogan with whom Kroll, Rubin & Fiorella LLP was on
brief for appellee.

October 23, 1998

 BOUDIN, Circuit Judge. Hollingsworth & Vose Company
("Hollingsworth") appeals from the denial of its motion for summary
judgment and the grant of summary judgment to A-P-A Transportation
Corporation ("A-P-A"). The issue turns on a tariff provision
limiting the carrier's liability for goods damaged during shipment
in exchange for a lower transportation charge. The federal statute
governing such tariff provisions has long been a source of
litigation.
 The pertinent facts are undisputed. In March 1993,
Hollingsworth arranged to ship a large metal cylinder used to
produce fabric--the device is called a calendar roll--from its
plant in Floyd, Virginia, to KRH Rolls, Inc. ("KRH"), in Orange,
Massachusetts. KRH recommended A-P-A as a carrier, and when
Hollingsworth agreed, KRH made the shipping arrangements. In
preparation, Hollingsworth's shipping clerk filled out a standard
bill-of-lading form regularly used by Hollingsworth. In the
bill's "name of carrier" section, the clerk typed "APA Trucking."
 Because A-P-A did not serve Floyd, Virginia, it arranged
for another carrier, Wilson Trucking Company, to pick up the
shipment and deliver it to A-P-A in Lexington, Virginia. 
Hollingsworth did not learn of this arrangement until Wilson's
driver arrived at the plant and told the shipping clerk that he
would be taking the calendar roll. Without objection from
Hollingsworth, the Wilson driver added "Wilson via Lexington VA" in
the "name of carrier" section of the bill of lading. Wilson
delivered the calendar roll to A-P-A in a damaged condition.
 Hollingsworth sued A-P-A for damages, and both parties
moved for summary judgment on a joint stipulation of agreed facts. 
A-P-A contended that the bill of lading incorporated the terms of
Wilson's tariff, duly filed with the Interstate Commerce
Commission, limiting Wilson's liability to 10 cents per pound. The
magistrate judge wrote a very able opinion concluding that this
provision limited the carrier liability. The judge required A-P-A
to pay $650 in damages, corresponding to the calendar roll's weight
of 6,500 pounds. Hollingsworth's actual loss was substantially
higher. This appeal followed.
 The 1906 Carmack Amendment to the Interstate Commerce Act
addresses a carrier's liability for shipments in interstate
commerce. See 49 U.S.C. 10730, 11707. Under that statute, a
carrier is fully liable for the "actual loss or injury to the
property," id. 11707(a), unless--as provided by the Cummins
Amendments a decade later--it takes specific actions to limit its
liability, id. 10730(b)(1). So far as pertinent here, such
actions include two separate steps, one involving the tariff and
the other the bill of lading.
 First, under 49 U.S.C. 10730(a), the carrier must
maintain a valid tariff with the ICC that contains a limited
liability rate but also makes an unlimited liability rate available
to the shipper (normally, the rate charged for the latter would be
higher). Second, the carrier must also obtain the "written
declaration of the shipper or . . . written agreement between the
carrier . . . and shipper" as to the "limited" value of the
shipment. Id. 10730(b)(1).
 It is undisputed in this case that the first requirement
(of a compliant tariff) was met. The applicable tariff, which both
parties concede to be Wilson's, provides for a maximum liability of
10 cents per pound unless the shipper declares otherwise. No one
disputes that under the tariff Hollingsworth could have increased
its protection by declaring a greater value and by paying a higher
rate.
 Hollingsworth does deny that the second requirement was
satisfied, namely, a written declaration or agreement of the
shipper as to the limited value of the shipment. Hollingsworth's
bill of lading contained a section for a declaration. It reads:
 Where the rate is dependent on value, shippers
 are required to state specifically in writing
 the agreed or declared value of the property. 
 The agreed or declared value of the property
 is hereby specifically stated by the shipper
 to be not exceeding _____ per _____.

Hollingsworth's clerk left these entries blank, so we agree with
Hollingsworth that there was no declared value on the bill of
lading meeting the Carmack Amendment's requirement of a "written
declaration" by the shipper.
 However, the Carmack Amendment provides in the
alternative for a "written agreement between carrier . . . and
shipper" as to the limited value of the shipment. The tariff
provides in substance that the shipment's value is a maximum of 10
cents per pound unless the shipper declares otherwise. Since the
shipper is charged with knowledge of the tariff, American Ry.
Express Co. v. Daniel, 269 U.S. 40, 41-42 (1925), it follows that
Hollingsworth, in leaving the declaration space blank in the bill
of lading, agreed--by virtue of the tariff's "unless" clause--to
the 10-cents-per-pound maximum valuation.
 As a fall-back defense, Hollingsworth argues that the
bill of lading it originally prepared listed A-P-A as the carrier. 
Since A-P-A's tariff does not limit its liability, Hollingsworth
would have enjoyed full protection had A-P-A, instead of Wilson,
picked up the calendar roll. Because the carrier name was changed
by Wilson's driver, not Hollingsworth's clerk, Hollingsworth argues
that the bill of lading does not reflect its agreement to adopt
Wilson's tariff limitations instead of the full liability available
from A-P-A.
 Normally a party to a contract may not unilaterally alter
its terms. But Hollingsworth does not claim that Wilson wrote in
Wilson's name without Hollingsworth's knowledge and approval. In
effect, the bill of lading tendered by Hollingsworth was still a
proposed agreement under negotiation when Wilson's driver sought to
amend the proposal. Both parties assented to the altered form,
substituting Wilson as the carrier, so the Wilson tariff was
adopted as part of the written agreement. Thus, the Carmack
Amendment's literal terms were met in this case.
 Hollingsworth's last--and best--defense is drawn from New
York, New Haven & Hartford R. R. v. Nothnagle, 346 U.S. 128 (1953). 
There, a passenger sued the railroad after a porter lost the
passenger's suitcase. The railroad invoked a tariff provision
limiting recovery to $25 unless the passenger had declared a higher
valuation in writing. See id. at 129. The Supreme Court rejected
the tariff limitation because "[t]here was no 'value declared in
writing by the shipper or agreed upon in writing'; in fact, not
even a baggage check reciting a limitation provision changed
hands." Id. at 135.
 Since in Nothnagle there was no written declaration or
agreement of any kind by the passenger, the decision would be
irrelevant here, save that the Supreme Court continued almost
immediately by making the following observation:
 [O]nly by granting its customers a fair
 opportunity to choose between higher or lower
 liability by paying a correspondingly greater
 or lesser charge can a carrier lawfully limit
 recovery to an amount less than the actual
 loss sustained. . . . Binding respondent by a
 limitation which she had no reasonable
 opportunity to discover would effectively
 deprive her of the requisite choice . . . .

Id. at 135-36 (citations omitted). This "fair opportunity"
language, which was in some measure surplus, has taken on a life of
its own, and later circuit cases have treated the rubric almost as
if it were an independent requirement of the Carmack Amendment. 
What has developed is a continuing controversy about how to decide
whether there has been such a "fair opportunity."
 The problem is that the circuit courts have not been able
to agree on any single, bright-line test for what is a "fair
opportunity." Partly this results from the diversity of fact-
patterns (e.g., obscure bill-of-lading language, affirmative
carrier misrepresentations). But partly it may be due to a
resistance, in the face of the "fair opportunity" language, to the
ordinary law of contracts and tariffs that makes a party pretty
much responsible for whatever he or she signs and charges the
shipper with knowledge of filed tariffs.
 This circuit has confused matters further with its
decision in Anton v. Greyhound Van Lines, 591 F.2d 103, 107-10 (1st
Cir. 1978), understandably relied upon by Hollingsworth. In that
case, the Air Force shipped under its own bill of lading the goods
of a retiring officer who requested the shipment. See id. at 105. 
After damage occurred, the carrier invoked the tariff which
contained a per-pound limit on liability. See id. at 106. This
court rejected the limitation under the Carmack Amendment, saying
that there was no "writing of plaintiff indicating any assent to a
limitation of liability." Id. at 108.
 Anton notwithstanding, the Air Force had acted at the
officer's request in arranging the shipment, and its own bill of
lading incorporated a government-shipment tariff limiting the
carrier's liability to "$.60 per pound per article unless otherwise
specifically annotated thereon [i.e., on the bill of lading]." Id.at 105 n.2. Nowhere does Anton explain why this bill of lading was
not a "written agreement between the carrier . . . and shipper," 49
U.S.C. 10730(b)(1), limiting value of the shipment. Manifestly,
the government was either the shipper itself or, if the officer is
regarded as the shipper, then the shipper's agent.
 In our own case, the magistrate judge thought that Antonhad been qualified or overruled by then-Chief Judge Breyer's later
decision in Hill Constr. Corp. v. American Airlines, 996 F.2d 1315
(1st Cir. 1993). While the attitude of the Hill case is certainly
very different, Hill involved the limited liability provision of an
airline waybill construed by its own terms and without reference to
the Carmack Amendment. Accordingly, we think it better candidly to
disavow the reasoning of Anton. Even without Anton, the question
remains whether under Nothnagle there was a "fair opportunity" for
Hollingsworth to choose a higher liability limit.
 There are less than a dozen or so circuit court cases
that touch on the "fair opportunity" question, occasionally
conflating it with the question whether there was an agreement at
all. See note 3, above. In some, the shipper has prevailed, but
because of some atypical quirk, such as where the carrier
affirmatively misled the shipper or failed to provide a blank
declaring a higher value. See, e.g., Rohner, 950 F.2d at 1082-84. 
Perhaps only four circuit cases confront the naked issue whether a
"fair opportunity" is afforded by a legally adequate tariff,
standard bill-of-lading language, and a blank for the shipper to
insert a higher declared value.
 Three of the decisions--Mechanical, 776 F.2d at 1088
(Second Circuit), Norton, 901 F.2d at 824-25 (Tenth Circuit), and
Hughes, 829 F.2d at 1423-24 (Seventh Circuit)--uphold the
limitation of liability. But of the three, only Norton (and a
concurring opinion by Judge Winter in Mechanical, 776 F.2d at 1089-
90) says or suggests that this is the proper result as to any
commercial shipper, see Norton, 901 F.2d at 824-25. The panel
majorities in the Mechanical and Hughes decisions can be taken to
have decided the matter on specific facts (e.g., how sophisticated
was the shipper, who prepared the bill of lading, etc.).
 By contrast, in Toledo the Sixth Circuit came close to
finding that the carrier's standard tariff and bill of lading
language, including the standard declared-value blank, neither
provides the "fair opportunity" contemplated by Nothnagle, nor
constitutes an "agreement" (for lack of an "absolute, deliberate
and well-informed choice by the shipper"). Toledo, 133 F.3d at
443. Toledo implies that something close to a separate, consumer-
friendly, specific warning to the shipper is necessary. Anton has
general language reflecting the same attitude. See Anton, 591 F.2d
at 108.
 Nevertheless, among the few holdings, Toledo's approach
is a minority position. It undercuts general principles that make
the shipper (like any other contracting party) responsible for what
the bill of lading says; and it reflects a reading of Nothnagle's
"fair opportunity" language that is miles away from the actual
facts of that case (where the "shipper" made no written agreement
or declaration of any kind). See Nothnagle, 346 U.S. at 129-30. 
Nor does it help to say that the Carmack Amendment was designed to
protect shippers, where, as here, the question is how much and in
what respect.
 We see no reason to choose between the "on-the-facts"
approach of the Second Circuit majority in Mechanical and the
"bright line" approach endorsed by Judge Winter in the same case
(and arguably by the Tenth Circuit in Norton, 901 F.2d at 830
(citing Judge Winter)). It is enough that the tariff made both
coverages available, the bill of lading afforded the shipper a
reasonable opportunity to choose between them (it was actually
proposed by Hollingsworth), and the shipper was a substantial
commercial enterprise capable of understanding the agreements it
signed. In our view, that is normally enough to give this shipper
a "fair opportunity" to opt for more coverage in exchange for a
higher rate.
 Since our facts are fairly typical (apart from the last-
minute switch of carrier), this outcome makes the law predictable
in the ordinary case involving a sophisticated commercial shipper
and standard language. Yet, as the circuit cases illustrate, there
are so many variations--including inadequate bills of lading and
affirmative misrepresentations by carriers--that we cannot lay down
a universal rule for cases that deviate from the ordinary case.
 Affirmed.