783 F.2d 1101
 251 U.S.App.D.C. 286, 33 Cont.Cas.Fed. (CCH) 74,249
 HOUSEHOLD GOODS CARRIERS BUREAU, INC., et al., Appellants,
v.
UNITED STATES DEPARTMENT OF DEFENSE, et al.
HOUSEHOLD GOODS FORWARDERS TARIFF BUREAU, et al., Appellants,
v.
UNITED STATES DEPARTMENT OF DEFENSE, et al.
 Nos. 84-5836, 84-5837.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 18, 1985.
Decided Feb. 21, 1986.
 
 Thomas M. Auchincloss, Jr., with whom Leo C. Franey, Washington, D.C., was on brief, for appellants in No. 84-5836.
 Alan F. Wohlstetter and Stanley I. Goldman, Washington, D.C., were on brief, for appellants in No. 84-5837.
 Michael J. Ryan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees. Newman T. Halvorson, Asst. U.S. Atty., Washington, D.C., entered an appearance for appellees.
 Before WRIGHT and EDWARDS, Circuit Judges, and DAVIS,* Circuit Judge, United States Court of Appeals for the Federal Circuit.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 This appeal disputes the validity of two new Department of Defense (Defense) procurement regulations treating with the solicitation of interstate rates for the shipment of household goods belonging to Defense personnel. The district court upheld both regulations, and we now affirm.
 
 I. HOUSEHOLD GOODS INDIVIDUAL RATE TENDERS
 
 2
 In prior years, Defense accepted from carriers interstate rates (for carriage of household goods) that had been collectively formulated by rate bureaus and comparable entities. Effective in 1984, the department cancelled this practice and adopted new regulations (and implementing practices) requiring individual tenders by the individual carriers. No. 84-5836, in a suit brought against the Government by some collective rate-making bureaus and several individual motor carriers, challenges these new regulations as contrary to that portion of the Interstate Commerce Act dealing with motor carriers, a statute which expressly authorizes collective rate-making. The issue being purely legal, both sides moved for summary judgment. The district court granted defendant-appellees' motion, denied appellants', and dismissed the action.
 
 
 3
 The short answer to this appeal is that, though the Interstate Commerce Act does authorize collective rate-making (and partially immunizes from anti-trust liability those carriers participating in such joint activity), there is nothing in that legislation that demands that Government procuring agencies accept such collectively made rate tenders. On the contrary, in 49 U.S.C. Sec. 10721(b)(1) (formerly the well-known Section 22 of the Interstate Commerce Act) individual carriers are expressly authorized to transport property for the Government at reduced rates.[1] This specific provision demonstrates that the Government is "free to contract with common carriers on its own terms" and has the right "to make its own arrangements." Howe v. Allied Van Lines, 622 F.2d 1147, 1154-55 (3d Cir.), cert. denied, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980). See also United Services Automobile Ass'n v. Paul Arpin Van Lines, 652 F.2d 198, 200-01 (1st Cir.1981). The Government is not bound by practices ordained for wholly private transactions. Conversely, individual carriers have the statutory right to deal directly with the Government. See 49 U.S.C. Sec. 10706(b)(3)(B)(ii) ("the [rate bureau] may not interfere with each carrier's right of independent action * * * "). The provision of Sec. 10721(b)(2) permitting a carrier to "quote or tender a [collectively established] rate" is not a directive that the Government must accept or consider that rate but simply a declaration that such a filing will not be illegal in itself. In sum, the Interstate Commerce Act allows the Government, if it wishes, to accept rate-bureau rates, but also permits the Government to reject those rates and to treat directly with individual carriers.
 
 
 4
 Nor is there anything in the Armed Services Procurement Act mandating that the Government can solicit only collectively determined rates. On the contrary, that statute declares that Defense procurement "shall be awarded on a competitive bid basis to the lowest responsible bidder, in all cases in which the use of such method is feasible and practicable under the existing conditions and circumstances," 10 U.S.C. Sec. 2304(a), and that the contract should be awarded to the responsible bidder whose bid "will be the most advantageous to the United States, price and other factors considered." 10 U.S.C. Sec. 2305(c). Far from requiring the use of rate bureau tenders, the Procurement Act stresses individual competition.
 
 
 5
 In the light of this statutory framework--the Interstate Commerce Act and the Armed Services Procurement Act[2]--it is impossible to consider the new regulation to be arbitrary or capricious. The Department of Defense merely seeks the advantages of the individual competition that Congress has specifically envisaged. In the field of procurement, in which the United States enjoys the broadest powers (Perkins v. Lukens Steel Co., 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108 (1940)), that cannot be an improper objective.
 
 II. ACCESSORIAL SERVICES
 
 6
 In addition to the question discussed in Part I, supra, No. 84-5837 attacks Defense's 1984 decision (in Item 11 of Household Goods Domestic Rate Solicitations 4-1) to prescribe charges for certain accessorial services associated with the transportation of household goods.[3] We have no doubt that the Government's wide power over its own procurement, taken together with express permission granted by 49 U.S.C. Sec. 10721(b)(1) (former Section 22), supra, gives the Defense Department adequate authority to set the charges it will accept for these incidental services.[4] If an individual carrier or forwarder does not wish to accept that level of charges, it remains free to decline to make a tender or offer. There is no compulsion to deal with the Government, and Sec. 10721(b)(1) surely does not give the appellants any right to deal with the Government if the latter deems the carrier's (or forwarder's) charges to be too high. The prescription of charges for the accessorial services gives Defense a rational and practical means for selecting low cost carriers, instead of having to take account of all the potential variations in accessorial charges submitted by different carriers or forwarders.
 
 For these reasons, the decision is
 
 7
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 291(a)
 
 
 [1]
 Section 10721(b)(1) provides in relevant part:
 [a] common carrier providing transportation or service * * * may transport property for the United States Government, * * * without charge or at reduced rates; except that any rates for the transportation of household goods for the United States Government shall not be predatory.
 
 
 [2]
 Recent motor carrier legislation reinforces Congress' interest in enhanced competition in that industry. See Motor Carrier Act of 1980, Pub.L. No. 96-296, 94 Stat. 793, Secs. 3(a) and 4, 49 U.S.C. Sec. 10101(a)(2), and note; Household Goods Transportation Act of 1980, Pub.L. No. 96-454, 94 Stat. 2011, Sec. 2(a)(2) and (3), 49 U.S.C. Sec. 10101 note
 
 
 [3]
 Accessorial services consist of certain packing and unpacking of goods, storage-in-transit, extra pickup or delivery, piano carriage charges, elevator carriage charges, waiting time, and other kinds of extraordinary service charges
 
 
 [4]
 The reduced rates charged the Government under Sec. 10721(b)(1) apply to all services related to the transportation of the property. See 49 U.S.C. Secs. 10102(21), (25)(B)