Lewis W. CASPE and Bernice W. Caspe, Appellees,

v.

AAACON AUTO TRANSPORT, INC., Appellant.

No. 80–1604.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1981.

Decided Sept. 10, 1981.

Ralph J. Zola, New York City, for appellant; Jack L. Cohen, Forest Hills, N. Y., argued, on the brief.

Davis, Hockenberg, Wine, Brown & Koehn, Jonathan C. Wilson, argued, and Jill S. Rolek, Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, ROSS, Circuit Judge, and VAN PELT,* Senior District Judge.

VAN PELT, Senior District Judge.

This action was commenced by plaintiffs under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11),[1] when Aaacon Auto Transport, Inc. failed to deliver their car[2] from Palm Springs, California, to Des Moines, Iowa. The trial court found in favor of the plaintiffs and

their car insurance company which was an intervenor in the action. Although defendant lists eleven issues on appeal, some of them appear to be inapplicable[3] and others were never briefed and we consider them to be waived or abandoned.[4] We believe that the following is a fair statement of the issues before us: Whether the district court erred in awarding (a) an amount in excess of $50 for lost personal property; (b) accountants' fees for reconstructing lost business records; and (c) attorneys' fees as a result of defendant's vexatious conduct.

The facts of this case are very simple. Mr. and Mrs. Caspe own a home both in Des

---

* Robert Van Pelt, Senior District Judge, District of Nebraska, sitting by designation.

1. The Carmack Amendment, 49 U.S.C. § 20(11), provides in pertinent part:

   Any common carrier * * * subject to the provisions of this chapter receiving property for transportation from * * * one State * * to * * * another * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line * * * such property may pass * * * and no * * * limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; and any such common carrier * * * shall be liable * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * to which such property may be delivered * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or * * * tariff * * * and any such limitation * * * is declared to be unlawful and void * * * [however] nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law * * * *Provided, however*, That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value de-

clared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this title; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon.

2. The car was actually owned by HICO Employees Profit Sharing Trust and leased to National Sheet Metal Company whose president is Lewis Caspe. The car was apparently used by the Caspes the same as if it were their own and for the purposes of this opinion is referred to as their car.

3. Aaacon appealed an award of interest on the judgment. Appellees informed us at oral argument that no interest was awarded. Appellant's statement of issues further mentions an appeal of towing charges, but we find no order pertaining to such and it was never further argued in the brief. An issue pertaining to whether the court erred in awarding the Caspe's auto insurer, who was a third party intervenor, the difference between the value of the car at the time it was stolen and the amount they were able to sell the car for after its recovery was settled prior to oral argument.

4. Aaacon failed to brief the issues as to whether the district court erred in denying its motion for new trial and in denying its motion for summary judgment. Based on the grounds of the motions made before the trial court, even if the issues had been argued and briefed, the result herein would have been unchanged as they had no merit.

Moines, Iowa, and in Rancho Mirage, California (which the parties have referred to as Palm Springs because that is the mailing address). Lewis Caspe contracted with Aaacon to pick up their 1975 Cadillac in Des Moines on December 28, 1974 and deliver it to Palm Springs where they spent the remainder of the winter. When they were ready to return to Des Moines, Mr. Caspe again contacted Aaacon about transporting the car and entered into a contract whereby Aaacon would pick up the 1975 Cadillac in Palm Springs on April 1, and deliver it on approximately April 4, 1975, to Des Moines.

The bill of lading signed by Mr. Caspe contained a clause stating:

> Unless a greater value is declared thereon above and additional tariff paid, shipper agrees that the declared value of all personal property in the vehicle is under fifty dollars and hereby releases carrier from all obligations for loss or damage thereto in excess of fifty dollars. In no event shall personal property exceed a designated value of $250.00.

The freight bill given to Caspe incorporated the terms of the bill of lading.

The car was never delivered as scheduled. It was found almost three months later abandoned, presumably by the driver hired by Aaacon, in the Atlanta, Georgia, airport parking lot. Mr. Caspe had testified an Aaacon representative had told him he could fill the trunk with anything he pleased and he had done so. When the car was recovered, the trunk contained a few of the Caspe's possessions, but the majority were missing including cameras, clothing, sporting equipment and gift items. Also missing was a briefcase containing certain commodities records which Mr. Caspe had placed in the interior of the car with the driver's permission. The car was ultimately sold by the Caspe's auto insurance company to the highest salvage bidder.

After several months of unsuccessful attempts to recover damages from Aaacon, Aaacon advised the Caspes that the extent of its liability was limited to $50. The Caspes filed suit in state district court in March of 1976. Defendant had the suit

removed in April to federal court. The case was not tried until November of 1979, approximately three and one-half years after suit was filed. This was in large part due to Aaacon's constant resistance and foot-dragging, including failure to comply with an order requiring production of documents and answers to interrogatories. The actual trial to the court, not including preliminary matters in chambers, took less than four hours to complete. The district court found that the limitation of liability clause in Aaacon's bill of lading was invalid because it failed to comply with the applicable tariff and Interstate Commerce Commission (ICC) order, and awarded plaintiffs $6,667.16 for their lost personal property, $1,050.00 for accounting fees to reconstruct the lost records, and attorneys fees.

■ Turning first to appellant's contention that its liability for personal property was limited to $50.00, we believe that the district court was correct in finding that the limitation clause was void for failure to fully comply with the tariff and ICC order. The tariff states in part:

> (b) The bill of lading and shipping order and/or receipt issued for any shipment accepted for transportation at the released rates established and maintained under the authority of this order shall have printed in bold-face type on the face thereof, a statement reading substantially as follows:
>
> > "Unless a greater value is declared hereon, the shipper hereby agrees and declares that the value of the baggage, personal effects and sporting equipment described herein is released to a value not exceeding $50 per shipment."
>
> (c) The released value must be entered on the shipping order and bill of lading and/or receipt in the following form:
>
> > "The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $ per shipment."

The released rates order contained the same provisions.

It seems obvious that the purpose of putting a limitation clause in bold-face type is to make it stand out and attract the reader's attention. It seems equally obvious that putting the entire agreement in densely packed bold-face type, such as Aaacon did, with the limitation clause buried in the middle of the agreement, does not achieve that purpose. Additionally, Aaacon's agreement provided no space for the shipper to declare the value of the property, as is contemplated by the tariff and order, and which would be a further means of attracting the shipper's attention by causing him to focus on the value of the shipment. We have no difficulty in finding the district court correctly decided that Aaacon's limitation of liability did not meet the required standards and was invalid under 49 U.S.C. § 20(11).

■ Turning to the issue of accountants' fees, the district court awarded the fees for reconstructing lost commodities records without any explanation of the basis for doing so. After discussing the invalidity of the limitation of liability clause, the district court simply stated:

Defendant is liable to plaintiffs for the loss of personal property in the amount of $6,667.16 and is liable to plaintiff Lewis Caspe in the additional amount of $1,050.00 for reconstructing the lost records.

In a supplemental brief requested by this court at oral argument, because neither party had briefed this issue, Aaacon has argued that the accountants' fees constitute special damages which are not recoverable. It contends that reconstruction

was not the necessary result of said loss. If the records had been copied beforehand, the reconstruction would not have been required.

Appellees in their supplemental brief contend that the fees represent actual damages, and that even if they are special damages they are still recoverable.

■ In general, actual damages are allowed when they are foreseeable and special damages are allowed only if actual notice was given the carrier of the possibility of injury. *Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d 1302 (10th Cir. 1981); *Hector Martinez & Co. v. Southern Pacific Transportation Co.*, 606 F.2d 106, 108–09 (5th Cir. 1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). The Tenth Circuit Court of Appeals considered the question of actual, special and consequential damages in *Reed, supra*. That case involved a similar situation where Aaacon's driver failed to deliver a car and it was found some time later at a sportscar dealership. However, the car was in such deplorable condition that the engine was ruined and restoration was impossible. The lower court had awarded special and consequential damages consisting of compensation to Reed for the loss of use of his automobile, and the reimbursement of monies expended in locating and ultimately disposing of the car. This was in spite of the fact that Aaacon's freight bill-order form stated that "Aaacon is not responsible for car rentals or any other special damages, including nonuse of the vehicle." The lower court found that this was an invalid attempt to limit liability, and the Court of Appeals agreed.[5] It concluded that

5. ... Clause 3 is an invalid attempt to limit liability. The Carmack Amendment, 49 U.S.C. § 20(11), expressly states that "any limitation of liability or limitation of the amount of recovery ... in any contract ... without respect to the manner or form in which it is sought to be made is declared to be unlawful and void." An exception is provided with respect to

"property ... received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates de-

pendent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released."

49 U.S.C. § 20(11). The exception is clearly inapplicable in this case; Aaacon does not establish or maintain rates for its automobile transport services that are dependent upon the automobile values declared in writing by its customers. The district court properly ignored the invalid exculpatory clause in de-

Reed's expenses, including storage fees, damage estimate fees, and transactional costs associated with the ultimate disposition of the automobile, were the natural and probable consequence of the damage done to the automobile, and need not be classified as "special damages."

*Reed, supra,* at 1306.

We have been unable to find a single case dealing with accounting fees as a measure of damages, whether actual or special. Although the harm suffered here was not as foreseeable as the necessity of renting a car upon failure of delivery or costs to determine salvagability upon recovery, and the question is a close one, we believe that the accounting fees under the facts of this case constituted actual damages which may be recovered by plaintiffs.

■ Our conclusion is based upon these factors and closely follows *Reed, supra.* The Carmack Amendment provides that a shipper is entitled to recover his full actual loss. *See Kaiser Aluminum Chemical v. Illinois Central Gulf Railroad Co.,* 615 F.2d 470, 474 (8th Cir. 1980), *cert. denied,* 449 U.S. 890, 101 S.Ct. 249, 66 L.Ed.2d 116 (1981). A carrier may only limit its liability by establishing a rate schedule dependent upon value. The district court here correctly found that Aaacon's attempt to limit its liability was invalid; thus any actual damages are recoverable. The court in *Martinez, supra,* at 110 concluded that:

> The general rule does not require the plaintiff to show that the actual harm suffered was the *most* foreseeable of possible harms. He need only demonstrate that his harm was not so remote as to make it unforeseeable to a reasonable man at the time of contracting.

We believe that it is foreseeable that a businessman, such as Mr. Caspe, spending four months away from his home and primary business location, would have financial records with him the same as the clothes and sporting equipment which were lost. This is particularly true where income tax time was approaching and reconstruction was necessary in order to prepare a tax return. We do not have before us the question of whether on a one day trip or trip of shorter duration the need for the same records would always be foreseeable.

Although there has been some discussion that the bill of lading and freight bill stated that luggage was to be placed in the trunk only, and that the briefcase was placed inside the car but not in the trunk, we do not believe this is fatal to plaintiffs' recovery. There is no explanation on either form as to the reason for placing luggage in the trunk only.[6] An Aaacon representative told Mr. Caspe that he could fill the trunk with anything he liked, but to leave the inside of the car free for the driver's luggage and any passengers. Thus, the purpose of putting luggage in the trunk only does not appear to be to limit liability with regard to such luggage. In addition, even if the briefcase and records had been placed in the trunk as requested, they still would have been stolen along with everything else. Thus, this argument has little merit.

We conclude under the facts of this case, that the harm for which the district court allowed a recovery was not so unforeseeable as to make damages for the loss unrecoverable.

■ Finally, there is the question of attorneys' fees. It must be recalled that plaintiffs' attorneys dealt unsuccessfully with Aaacon several months before filing suit, and then the case itself took approximately three and one-half years to reach trial. We have reviewed the record submitted to us on appeal, and agree with the

termining whether special or consequential damages were contemplated by the parties. *Reed, supra,* at 1306.

**6.** We further note that neither the tariff nor the released rates order dealing with the limitation of liability for baggage, etc. requires luggage to be placed in the trunk, referring instead to rates, for the transportation of baggage, personal effects and sporting equipment, not exceeding 500 pounds in weight, in interstate or foreign commerce *when placed in and accompanying a used automobile* being transported in driveaway service with casual drivers . . . . (emphasis added).

district court's conclusion that defendant's conduct was "most vexatious."[7] Under *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 254–59, 95 S.Ct. 1612, 1620–22, 44 L.Ed.2d 141 (1975) the court had the inherent power to award attorneys fees in such a case. *Miller v. Aaacon Auto Transport, Inc.*, 447 F.Supp. 1201, 1207 (S.D.Fla. 1978). Because appellant has failed to provide us with the actual court order awarding the fees, and we have seen at least four different numerical amounts[8] in documents provided to this court, we consider that appellant is merely questioning whether attorneys fees can be awarded, not the amount so awarded. However, by all indications, the district court did not abuse its discretion in that regard.[9]

The judgment and order of the district court is affirmed in all respects.

---

7. As mentioned earlier, appellant failed to comply with a court order to produce certain documents and to answer interrogatories. Instead, it filed a motion for partial summary judgment, requesting that the court rule on it with all due speed. A second order was necessary. Over one year after discovery was closed, Aaacon scheduled two depositions on the same day in different regions of the country. It refused to give local counsel any authority to stipulate to anything at the pretrial conference, and did not provide a witness list or exhibit list, and indicated no witnesses or exhibits would be offered at trial. As a result, a magistrate entered an order prohibiting Aaacon from having any witnesses at the trial, although they were allowed to introduce exhibits. In addition, there were numerous motions and requests for continuances which prolonged the proceedings. As stated in plaintiffs' Combined Application for Continuance of Oral Depositions and Protective Order:

> The amount in controversy is less than ten thousand dollars; and were these average Plaintiffs this action would have died long ago through the exhaustion of Plaintiff's resources and will.

Undoubtedly, this is precisely what Aaacon was hoping would happen.

8. It was stated in appellant's brief at 28 that the court concluded $4,133 of plaintiffs' legal fees was attributable to vexatious conduct, and at page 30 that the trial court granted $3,970. Appellee's brief at 19 indicates that $4,100 was the amount found by the lower court to be attributable to vexatious conduct. Finally, there is reference in a later order awarding plaintiffs further attorneys' fees with regard to a post-trial motion made by defendants (Aaacon does not appeal that award here) and reprimanding Aaacon's local counsel in which the court itself refers to the earlier award as $3,980.

9. The amount requested for attorneys fees was $11,175.10, which is more than the total amount involved in this case. We have no doubt that the lengthy proceedings involved over four years could indeed generate a bill of this size. Aaacon hardly has to worry about its legal bills, since it is owned by Ralph Zola, the head of Zola and Zola, a law firm who presented the appeal in this court and who was primary counsel in the lower court. If unfair tactics have been or are used by Aaacon, then persons like Caspe are necessary to establish principles needed to insure that justice ultimately prevails.